MICHAEL J. KHOURI, ESQ. [CA SBN 97654]
Email: mkhouri@khourilaw.com
KHOURI LAW FIRM, APC
2222 Martin, Suite 215
Irvine, California 92612
Telephone:     (949) 336-2433
Fax:                (949) 387-0044

Attorney for Defendant,
ALFREDO BUENO VILLA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                           Plaintiff,<br>    v.<br>ALFREDO BUENO VILLA<br><br>                           Defendant. | Case No. 20CR2670-BAS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date:  August 1, 2022<br>Time: 9:00 am<br>Judge: Hon. Cynthia A. Bashant |

Defendant Alfredo Bueno Villa ("Villa") has reviewed the presentence investigation report ("PSR") and submits the following memorandum in aid of sentencing:

## I.     INTRODUCTION

Defendant Villa respectfully requests that the Court depart from the United States Sentencing Guidelines and impose a sentence of 24 months. A sentence of 24 months is appropriate in this case because it complies with the statutory purposes of federal sentencing of imposing a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). While the statutory minimum term of imprisonment for each count on which Villa was convicted is 120 months, a sentence of 24 months appropriate because Villa meets the criteria set forth in 18 U.S.C. § 3553(f), which authorizes the Court to impose a sentence for an offense under the Controlled Substances Import and Export Act without regard to any statutory minimum sentence where a defendant satisfies the applicable criteria. 18 U.S.C. § 3553(f); *see also* U.S.S.G. §

1

**DEFENDANT'S SENTENCING MEMORANDUM**

5C1.2(a).

By way of background, Villa was found guilty following a jury trial of one count of Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and one count of Importation of Fentanyl, in violation of 21 U.S.C. §§ 952 and 960. Villa is a 40-year old man who has never before been convicted of any offense. Villa was born in Mexicali, B.C., Mexico and immigrated to the United States at about the age of 17 where, despite his humble beginnings, he was able to raise a family and build in a successful, 20-year career as a mechanic, including owning and operating his own business specializing in automotive related fabrication.

The information relating to Villa's upbringing and family history is accurately reflected in the PSR. Villa is the second of three brothers from his parents' union. (PSR, ¶ 41). He spent his childhood in a rural neighborhood in Mexicali, where his parents struggled financially but worked exceptionally hard to provide Villa and his siblings with basic necessities. (PSR, ¶¶ 43–44). Villa's father, Javier Bueno (age 69) was employed as a teacher and also operating an automobile mechanic business for extra income. Villa credits his father for teaching him much of what he knows about fabricating and repairing automobiles. Villa's mother, Maria Teresa Villa (age 64) was also a teacher. (PSR, ¶ 40). Maria Teresa Villa was diagnosed with ALS four years ago and her health has been steadily deteriorating.

At the age of 17, Villa relocated to Yuma, Arizona on his own in pursuit of a better life. (PSR, ¶ 45). Villa then moved to California with his new wife and child. Villa was married for 16 years and had two children from this marriage: Gissela (age 21) and Alfredo Jr. (age 17). (PSR, ¶ 46). Villa is currently in a relationship with his fiancée, who has two minor children from a previous relationship that Villa cares for and loves as his own. (PSR, ¶ 48).

Although Villa never finished high school, he has several welding and hydraulic certifications, which he leveraged into a successful 20-year career as mechanic and earned a substantial salary prior to his arrest. (PSR, ¶¶ 62, 69). Villa also owns and operates his own business specializing in automotive related fabrication, including building drag race cars and some off-road vehicles. Villa is a determined individual who understands the value of hard work, and his successful career and strong familial support is a testament to his good character. In addition, Villa's employer is willing to rehire Villa once he is released from custody, which is

further evidence of Villa's impressive work ethic.

As noted above, Villa does not have a criminal history and had never been arrested or convicted prior to the present matter. Moreover, Villa does not suffer from any alcohol or substance abuse. (PSR, ¶ 59). Given Villa's background and characteristics, a sentence of 24 months is appropriate.

## II.    STANDARDS UNDER THE UNITED STATED SENTENCING GUIDELINES

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are not mandatory, but advisory, and a sentencing court may move below the advisory guideline if the resulting sentence is reasonable. Moreover, the Supreme Court has recognized that district courts may depart from the sentencing guidelines based on disagreements with the guideline policy considerations, and also when circumstances warrant such a sentence even though the defendant's circumstances are not extraordinary. *Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Gall v. United States*, 552 U.S. 38, 47 (2007). Indeed, sentencing judges "exercise a wide discretion" in the types of evidence they may consider when determining a sentence. *Williams v. New York,* 337 U.S. 241, 246–47 (1949).

### A.    The United States Sentencing Guidelines

| | | |
|---|---|---|
| Base Offense Level | 38 | [§ 2D1.1(c)(1)] |
| Importation of methamphetamine | + 2 | [§ 2D1(b)(5)] |
| Adjusted Offense Level | 40 | |

Villa has zero criminal history points, which results in a Criminal History Category I. The Initial sentencing range is 292 – 365 months.

### B.    Downward Adjustments

Villa Respectfully requests that the Court order downward departures as follows:

A 2-level downward departure pursuant to U.S.S.G. § 2D1.1(b)(18).

An 8-level downward departure based on the aberrant nature of his conduct pursuant to U.S.S.G. § 5K2.20.

A 13-level downward departure based on a combination of factors pursuant to U.S.S.G §

5K2.0 and *United States v. Cook.*

| | |
|---|---|
| Adjusted Offense Level | 30 |
| U.S.S.G. § 2D1.1(b)(18) Departure | - 2 |
| U.S.S.G. § 5K2.20 Departure | - 8 |
| U.S.S.G § 5K2.0 and *Cook* Departure | -13 |
| Total Adjusted Offense Level | 17 |

Therefore, the resultant adjusted offense level is eight, with Criminal History Category I. The sentencing range would be 24–30 months.

### III. A 2-LEVEL DECREASE IS WARRANTED PURSUANT TO U.S.S.G. § 2D1.1(b)(18)

The two counts at issue carry a 120-month mandatory minimum sentence. If Villa meets the criteria set forth in U.S.S.G. § 5C1.2, however, the mandatory minimum does not apply and he receives an additional 2-level downward adjustment to his offense level. *See* U.S.S.G. § 2D1.1(b)(18).

In the present case, Villa meets all set forth in U.S.S.G. § 5C1.2. First, Villa has a criminal history score of zero. Second, the offense did not involve any violence or threats of violence. The offense occurred at a border patrol inspection point and Villa did not engage or threaten any violence during the inspection, nor did he possess a firearm or other dangerous weapon. Third, the offense did not result in death or serious bodily injury. Fourth, Villa was not an organizer or supervisor of others in the offense and was not engaged in any continuing criminal enterprise during the offense. And fifth, Villa has complied with all other requirements of U.S.S.G. § 5C1.2. Therefore, Villa is entitled to a 2-level decrease pursuant to U.S.S.G. § 2D1.1(b)(18).

### IV. THE COURT SHOULD DEPART DOWNWARD BECAUSE VILLA'S CONDUCT WAS ABERRANT BEHAVIOR THAT WILL NOT BE REPEATED

The Sentencing Commission has acknowledged its inability to fashion a sentencing system that covers all cases: "the Commission, of course, has not dealt with the single acts of aberrant behavior that still my justify probation at higher offense levels through departures." U.S.S.G. Ch.1, pt. A, § 4(d). Thus, "the Guidelines recognize that the first offense may constitute

4
**DEFENDANT'S SENTENCING MEMORANDUM**

a single act of truly aberrant behavior justifying a downward departure." *United States v. Dickey*, 924 F.2d 836, 838 (9th Cir. 1991); *see also United States v. Rojas-Millan,* 234 F.3d 464, 475 (9th Cir. 1992); *United States v. Fairless,* 975 F.2d 664, 667 (9th Cir. 1992)*United States v. Morales*, 972 F.2d 1007, 1011 (9th Cir.1992); *United States v. Takai*, 941 F.2d 738, 743 (9th Cir. 1991) (downward departure warranted for two-first time offenders who conspired with an agent of the INS to obtain green cards for other individuals).

To determine whether an offense constitutes an act of aberrant behavior, the sentencing court must look to the totality of the circumstances. *Fairless,* 975 F.2d at 667. The sentencing court may consider:

> (1) the singular nature of the criminal act, (2) spontaneity and lack of planning, (3) the defendant's criminal record, (4) psychological disorders the defendant was suffering from, (5) extreme pressures under which the defendant was operating . . . (6) letters from friends and family expressing shock at the defendant's behavior, and (7) the defendant's motivations for committing the crime

*United States v. Working*, 224 F.3d 1093, 1099 (9th Cir. 2000).

In *Fairless,* the defendant robbed a bank at gunpoint. The Ninth Circuit upheld a departure for aberrant behavior upon consideration of factors such as the fact that it was the defendant's first criminal offense, the defendant suffered from manic depressions, he was under extreme financial pressure, and numerous letters from friends and family stated that the offense was a complete shock and was out of character. *Fairless*, 975 F.2d at 668. Similarly, the sentencing court in *United States v. Patillo*, 817 F.Supp. 839, 845 (C.D. Cal. 1993) found the defendant's crime to be an act of aberrant behavior because the offense was the first time the defendant had been in any kind of trouble, the crime was "out of character" for the defendant, and the defendant held a well-paid job and had a stable employment history.

In the present case, Villa has no prior criminal record. Villa was employed at the time of the offense and was earning a substantial salary. As the PSR notes, "His salary was significant and leaves one wondering why he risked so much by involving himself in the smuggling venture. . . He has a significant and successful employment history and has strong familial support." (PSR, ¶¶ 89–90). Accordingly, the instant offense was out of character for Villa, who was earning a significant income from his success as a mechanic and had no prior history of criminal conduct. Given the aberrant nature of Villa's offense, an 8-level downward departure is

warranted under U.S.S.G. § 5K2.20.

Despite U.S.S.G. § 5K2.20(c)(3) prohibiting a court from applying a downward departure for a conviction that is a serious drug trafficking offense, a district court has applied a downward departure for aberrant behavior in a drug trafficking case to remedy the concerns "about the unfairness of applying a minimum sentence for non-violent, first offender drug defendants." *United States v. Germosen,* 473 F.Supp.2d 221, 229–30 (D. Mass. 2007). In *Germosen,* the sentencing court found that U.S.S.G. § 5K2.20(c)(3) was advisory and did not comport with the purposes of sentencing if applied in that case because the defendant was a first offender. Specifically, the offense was a "marked deviation by the defendant from an otherwise law abiding life; there was no violence. The defendant's record was wholly free of any criminal offenses. And when apprehended, his cooperation with the authorities reflected just what his prior life had been like–constructive, cooperative and law abiding." *Id.* at 230. Moreover, the offense did not involve a complex transaction, all the planning was performed by others far more culpable than the defendant, and the offense of limited during in that it involved only two trips. *Id.* Indeed, by imposing the mandatory minimum, the court "would put into the same category an offender who is so far down the organizational tree that he would endanger his life by putting drugs into his own body, for a relatively small sum of money, and one who was reaping vast profits from the same act and the same quantity." *Id.*

Here, sentencing Villa to applicable guideline range would not comport with the purposes of sentencing. Like the defendant in *Germosen*, Villa has no prior criminal record, Villa was not an organizer of offense, which was planned by others more culpable than Villa, and the offense involved only one trip. In addition, no violence was involved in the offense and Villa cooperative with authorities. Therefore, a sentence within the guideline range would be manifestly unjust, as Villa otherwise lived a law-abiding life with a successful career and a loving family.

### V.     COMBINATION OF FACTORS

Under *United States v. Cook,* 938 F.2d 149, 153 (9th Cir. 1991), a sentencing court may depart downward based upon a combination of actors that, taken individually, may not justify a departure. As the Ninth Circuit in *Cook* observed:

6
DEFENDANT'S SENTENCING MEMORANDUM

> In making a decision in a particular case, good judgment will often require the evaluation of a complex of factors. No single factor may be enough to point to the wise course of a decision. But a wise person will not look on each particular factor alone. Rather, it will be how the particular pieces fit together, converge, and influence each other that will lead to the correct decision.

*Id.*

In addition, U.S.S.G. § 5K2.0, authorizes a sentencing court to consider circumstances that are not adequately taken into consideration when determining the guideline range, including circumstances that are not specifically identified in the Guidelines but are nevertheless relevant to determining the appropriate sentence.

Accordingly, Villa respectfully requests that the Court determine downward departure of 13 levels is warranted based on the factors addressed below.

A.  School, Work, and Family Responsibilities

District courts have been explicitly authorized to depart from the guidelines based on a factor the Commission has adequately considered elsewhere if the court finds that "in light of the unusual circumstances, the guideline level attached to that factor is inadequate. U.S.S.G. § 5K2.0.

Here, Villa has an exceptional employment record, which he uses to support his family. A sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential financial support to his family. Villa is currently ordered to pay $900 per week in child support for his son and continues to support his daughter. (PSR, ¶ 47). In addition, Villa is in a relationship with his fiancée, who has two minor children from a previous relationship. (PSR, ¶ 48). Villa noted that he cares for the two minor children as his own. Villa also noted that his fiancée is currently taking care of his financial responsibilities while he is incarcerated. If Villa is incarcerated, however, his fiancée would not be able to manage both Villa's financial responsibilities and raising the minor children, and Villa's former wife would not receive the necessary child support for their son.

Villa's employment record, including his employer's willingness to rehire Villa once he is released from custody, indicates that Villa can continue to support his family and be a productive member of society despite the present convictions. Villa's children, as well as his

fiancée and soon-to-be stepchildren, depend on Villa's income. (PSR, ¶ 50). Therefore, a sentence within the applicable guideline range would disrupt the support Villa provides for his family. Villa requests that the Court take the above into considering when determining downward departures.

### B. Sentencing Disparity

This court should depart downward because of sentencing disparity. A sentencing court, is required to examine several factors in determining an appropriate sentence, including whether the proposed sentence is sufficient, but not greater than necessary to comply with the purposes of federal sentencing and whether the proposed sentence would result in unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6).

As recommended by the PSR, a sentence below the advisory guideline range is sufficient, but not greater than necessary, in this case to avoid unwarranted sentencing disparity, and to provide adequate deterrence and just punishment. (PSR, ¶¶ 85, 92). In making the recommendation, the PSR notes that the instant offense is Villa's first conviction of any type. Furthermore, Villa has great familial support, a significant employment history, and Villa's former employer is reportedly willing to rehire him once he is released from custody.

In addition, Villa also submitted a motion for a new trial based on newly discovered evidence that implicated another individual as culpable for the present offense. While the motion was ultimately denied by the Court, sentencing Villa to a term within the guidelines would result in an unwarranted sentencing disparity in that Villa would receive a substantial sentence despite his minor or minimal role in the offense and his dissimilarity to other offenders convicted of the same offense.

When considering whether a sentence would result in an unwarranted disparity, a district court may consider a defendant's dissimilarity with others convicted of the same offense. *United States v. Autery,* 555 F.3d 864, 876 (9th Cir. 2009). In *Autery*, the Ninth Circuit held that the district court did not abuse its discretion in imposing a sentence that is dissimilar from the sentence that other defendants received after finding that the defendant did not "fit the profile of a pedophile" and was qualitatively different from the "hundreds and hundreds" of others the

8
**DEFENDANT'S SENTENCING MEMORANDUM**

court encountered who had engaged in similar behavior. *Id.*

Here, Villa does not fit the profile of a drug trafficker. Villa has a successful career, and operates his own business outside of his employment. Villa was able to fully support himself and his family on his legitimate income and had no need to risk his livelihood to traffic drugs. Villa is also dedicated to his trade as a mechanic and earned several welding and hydraulic certifications throughout his long career. Therefore, a sentencing range of 292 – 365 months would result in an unwarranted sentencing disparity given the dissimilarity of Villa's circumstances with that of other convicted of the same offense.

## VI.   STATUTORY SENTENCING FACTORS IN 18 U.S.C. § 3553(a)

Once the applicable Guidelines range is determined, a sentencing court must consider the sentences suggested by the parties and decide whether the 18 U.S.C. § 3553(a) factors support the suggested sentences. *United States v. Rangel,* 697 F.3d 795, 805 (9th Cir. 2012). Pursuant to 18 U.S.C. § 3553(a), a sentencing court should impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of federal sentencing. 18 U.S.C. § 3553(a) further provides a series of factors the sentencing court shall consider in determining the particular sentence to be imposed. In particular,

> [I]t should consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims.

*Id.*

### A.   Nature and Circumstances of the Offense

In determining the appropriateness of a sentence, "the punishment should fit the offender and not merely the crime." *Williams,* 337 U.S. at 247. While the nature of the offense in this case is serious, Villa respectfully requests that the Court also consider his history and characteristic, which provides significant mitigation in the determination of an appropriate sentence.

### B.   History and Characteristics of the Defendant

As described herein and in the PSR, Villa has a successful career and strong familial

relationships. Villa was able to achieve his success through his exceptional work ethic and good character. As further evidence of his character, Villa's employer is willing to rehire him upon his release from custody. Despite his humble beginnings, Villa was able to become a productive member of society and had no prior criminal convictions of any type before the present offense. In addition, Villa remained in compliance with the conditions of his release on bond. (PSR, ¶ 85). Villa never threatened violence or used any weapons during the offense. Indeed, Villa has no history of violence or substance abuse.  Villa is a selfless individual, who is a father to two children and will soon be a father to two stepchildren.

    C. <u>The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, to Protect the Public, and to Provide for the Defendant's Needs in the Most Effective Manner</u>

As noted above, Villa has strong familial ties and a potential employer upon his release from custody. Villa also complied with the conditions of his release on bond and did not commit and crimes during his release from custody pending the motion for new trial. Given those circumstances, Villa would be able to seamlessly return to a law-abiding life and nothing indicates that Villa poses any threat to the public. Therefore, a sentence of 24 months would be sufficient, but not greater than necessary, to reflect the seriousness of the offense while also considering the Villa's history and circumstances.

    D. <u>The Kind Of Sentencing Range Established by the Guidelines</u>

A guideline range of range of 292 to 365 months would be unreasonable given the totality of the circumstances of the offense and the characteristics of Villa. In particular, the circumstances of the offense did not involve any violence and Villa otherwise lived a successful and law-abiding life.

    E. <u>Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct</u>

As noted above, Villa is qualitatively dissimilar to other offenders convicted of the same crime. *See* Section V.B. A substantial sentence of 292 to 365 months would result in an unwarranted sentencing disparity given the fact that Villa has no prior convictions, has supported himself and his family with a legitimate career, and can continue with his career upon his release

from custody. Therefore, a sentence of 24 months is appropriate in this case.

## VII. CONCLUSION

For the foregoing reasons, Villa respectfully requests that this Court impose a sentence of 24 months.

DATED: July 29, 2022              Respectfully submitted,

                                  KHOURI LAW FIRM, APC

                          By:     /s Michael J. Khouri
                                  MICHAEL J. KHOURI
                                  Attorney for Defendant
                                  ALFREDO BUENO VILLA

**DEFENDANT'S SENTENCING MEMORANDUM**